UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT CHATTANOOGA

| | | |
|---|---|---|
| JAMES E. GRIFFIN,<br><br>*Plaintiff*,<br><br>v.<br><br>CORWYNN LEE,<br><br>*Defendant*. | ) ) ) ) ) ) ) ) ) | Case No. 1:25-cv-313<br><br>Judge Travis R. McDonough<br><br>Magistrate Judge Christopher H. Steger |

---

## MEMORANDUM OPINION

---

Before the Court is Defendant Corwynn Lee's[1] motion for summary judgment (Doc. 31). For the reasons stated herein, Defendant's motion (*id.*) will be **GRANTED**.

## I. BACKGROUND

Defendant Corwynn Lee is a police officer employed by the City of Chattanooga Police Department. (Doc. 34-1("Lee Deposition") at 6:14–15.) Plaintiff James Griffin is a resident of Murfreesboro, Tennessee, whose employment requires him to travel to Chattanooga often. (Doc. 34, at 3.) On March 12, 2025, at approximately 3:52 a.m., Defendant approached Plaintiff's vehicle, which was stopped in the middle of a road. (Doc. 34, at 3; Doc. 32, at 2.) The vehicle moved forward when Defendant approached it. (Doc. 32, at 2 ("When he approached, the vehicle began to drive forward."); Doc. 34, at 3 ("Plaintiff began a process of turning his vehicle around[.]").) Defendant then activated his lights to initiate a traffic stop. (Doc. 34, at 3; Doc. 32, at 2.) Plaintiff pulled his vehicle over to the left side of the road. (Doc. 32, at 2; Doc. 34, at 34.)

[1] Plaintiff's amended complaint incorrectly stated Defendant's name as "Lee Corwynn." (*See* Doc. 21.) The Court will use the corrected name in this memorandum opinion.

When Defendant approached the vehicle, he informed Plaintiff that he was stopping him because he was stopped in the middle of the road. (*Lee Bodycam Footage*, 1:16–1:24.) Plaintiff explained that he worked for the railroad and would sometimes drive around when he could not sleep. (*Id.* at 1:30–1:37.) Defendant asked Plaintiff why his airbag had been removed from the steering wheel, requested his identification and proof of insurance, and asked if he had been drinking that night, to which Plaintiff replied, "No, sir." (*Id.* at 1:36–2:43.) Defendant next questioned Plaintiff about the "wet stains" on his shirt. (*Id.* at 2:43–2:50.) Plaintiff explained the stains were a result of spills from his shirt being kept inside a bag with other items. (*Id.*) Plaintiff told Defendant he had worked in the Chattanooga area for twenty-one years and he parked in the middle of the road because he was unsure where he was and whether the road he was on connected to another road. (*Id.* at 5:20–5:52.)

After collecting this preliminary information, Defendant asked Plaintiff if he was willing to perform field sobriety tests, to which Plaintiff consented. (*Id.* at 7:30–7:35.) Plaintiff then performed several field sobriety tests: (1) horizontal gaze nystagmus; (2) walk-and-turn; and (3) one-leg-stand. (Lee Depo. 34:5–8; 39:21–22; 52:25–53:1); (*see Lee Bodycam Footage*, at 7:40–19:06.) Defendant later testified that he noticed several failures during the sobriety testing, including: lack of smooth pursuit in both eyes during the horizontal gaze nystagmus test; failure to maintain instructional position, use of arms for balance, and an improper turn on the walk-and-turn test; and use of arms for balance and putting his foot down during the one-leg-stand test. (Doc. 32, at 2); (Lee Depo. 34:10; 48:11; 49:17–19; 50:2–12; 54:12–15); (Doc. 32-1, at 7 (affidavit and application for a search warrant)).

Following completion of the field sobriety tests, Defendant placed Plaintiff under arrest for suspicion of driving under the influence ("DUI"), informing Plaintiff that he was "showing

signs of impairment," but "not the regular signs [Defendant had] seen for alcohol." (*Lee Bodycam Footage*, at 19:25–20:47.) Defendant placed Plaintiff in the back of his vehicle, made a phone call to a supervisor,[2] and returned to his vehicle to ask Plaintiff to perform two additional field sobriety tests: the numbers test and alphabet test. (*Lee Bodycam Footage* at 21:00–29:30); (Lee Depo. at 62:24–25.) After Plaintiff completed these tests, Defendant made another phone call, arranged for officers to move Plaintiff's car, and transported Plaintiff to the Hamilton County Jail. (*Lee Bodycam Footage* at 30:00–31:06.)[3]

Upon arrival at the Hamilton County Jail, Defendant executed an affidavit and application for a search warrant, stating the following in support of his belief that "there exist[ed] evidence of [a] . . . substance affecting the central nervous system . . . that impair[ed] the driver's ability to safely operate a motor vehicle:

> On 03/12/2025, I, Ofc Lee #1199 witnessed a white Honda Accord . . . stopped in the middle of the road. . . . I came up on the car and then the vehicle began to drive forward, that was when I activated by blue lights and conducted a traffic stop. The vehicle pulled to the left hand side of the road when the vehicle pulled over. I identified that driver as James Griffin. I noticed Mr. Griffin's shirt had wet stains on the front and the shoulder. I asked Mr. Griffin if he would be willing to perform a standardized field sobriety test, and he agreed. During the horizontal gaze nystagmus, Mr. Griffin showed clues with lack of smooth pursuit in both eyes. In the walk and turn, Mr. Griffin failed to maintain the instructional position. During the task Mr. Griffin used his arms for balance and made an improper turn. For the one leg stand, Mr. Grriffin used his arms for balance and placed his foot down.
> (Doc. 32-1, at 7 (affidavit and application for a search warrant).)

A state magistrate judge issued a search warrant for a blood sample. (Doc. 32-1, at 4 (search warrant).) The blood sample's drug and alcohol report came back negative, and the driving-under-the-influence charge was eventually dismissed. (Doc. 32-1, at 3); (Doc. 34, at 8.)

---

[2] The bodycam footage is muted for a period of time, including during Defendant's phone calls. (*See, e.g.*, *Lee Bodycam Footage*, at 23:00.)

[3] This is the end of the bodycam footage.

Plaintiff filed this action on October 1, 2025, asserting claims against Defendant pursuant to 42 U.S.C. § 1983 for violations of his constitutional rights, as well as various state-law claims. (Doc. 1, 21.) Defendant moved for summary judgment, arguing he is entitled to qualified immunity on Plaintiff's claims, and Defendant's motion is now ripe for review. (Doc. 31.)

## II. STANDARD OF REVIEW

Summary judgment is proper when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The Court views the evidence in the light most favorable to the nonmoving party and makes all reasonable inferences in favor of the nonmoving party. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Nat'l Satellite Sports, Inc. v. Eliadis Inc.*, 253 F.3d 900, 907 (6th Cir. 2001).

The moving party bears the burden of demonstrating that there is no genuine dispute as to any material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Leary v. Daeschner*, 349 F.3d 888, 897 (6th Cir. 2003). The moving party may meet this burden either by affirmatively producing evidence establishing that there is no genuine issue of material fact or by pointing out the absence of support in the record for the nonmoving party's case. *Celotex*, 477 U.S. at 325. Once the movant has discharged this burden, the nonmoving party can no longer rest upon the allegations in the pleadings; rather, it must point to specific facts supported by evidence in the record demonstrating that there is a genuine issue for trial. *Chao v. Hall Holding Co., Inc.*, 285 F.3d 415, 424 (6th Cir. 2002).

At summary judgment, the Court may not weigh the evidence; its role is limited to determining whether the record contains sufficient evidence from which a jury could reasonably find for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248–49 (1986). A

mere scintilla of evidence is not enough; the Court must determine whether a fair-minded jury could return a verdict in favor of the nonmoving party based on the record. *Id.* at 251–52; *Lansing Dairy, Inc. v. Espy*, 39 F.3d 1339, 1347 (6th Cir. 1994). "But where, as here, there is a videotape capturing the events in question, the court must view the facts in the light depicted by the videotape." *Green v. Throckmorton*, 681 F.3d 853, 859 (6th Cir. 2012) (quoting *Scott v. Harris*, 550 U.S. 372, 378–81 (2007)) (internal quotation marks omitted). The central question is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 251–52.

## III. ANALYSIS

Defendant argues that he is entitled to qualified immunity as to Plaintiff's civil rights claims and asks the Court to decline to exercise supplemental jurisdiction over the remaining state-law claims. (Doc. 31.)

### A. Violation of Constitutional Rights under 42 U.S.C. § 1983[4]

42 U.S.C. § 1983 provides in relevant part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . , subjects, or causes to be subjected, any . . . person . . . to the deprivation of any rights . . . secured by the Constitution and laws [of the United States], shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

To succeed on a claim under § 1983, a plaintiff must show: "(1) that he or she was deprived of a

[4] In his motion for summary judgment, Defendant argues that he is immune from civil liability for his use of force against Plaintiff. (*See* Doc. 32, at 5, 8.) Plaintiff notes in his response, however, that "no such action was plead in either the Complaint or Amended Complaint." (Doc. 34, at 10.) Since Plaintiff does not bring an unlawful-force claim, the Court declines to analyze Defendant's arguments regarding immunity from liability for unlawful force and the potential for attorneys' fees based on such a claim. (*See generally* Doc. 21.)

right secured by the Constitution or laws of the United States; and (2) that the deprivation was caused by a person acting under color of law."[5] *Robertson v. Lucas*, 753 F.3d 606, 614 (6th Cir. 2014) (citations omitted).

Qualified immunity, however, "shields government officials in the performance of discretionary functions from standing trial for civil liability unless their actions violate clearly established rights." *McDonald v. Flake*, 814 F.3d 804, 812 (6th Cir. 2016) (citing *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). This immunity "gives government officials breathing room to make reasonable but mistaken judgments about open legal questions, protecting all but the plainly incompetent or those who knowingly violate the law." *Habich v. Wayne Cnty.*, No. 22-1517, 2023 WL 2911663, at *1 (6th Cir. Apr. 12, 2023) (quoting *Ashcroft v. al-Kidd*, 563 U.S. 731, 743 (2011)) (cleaned up).

A plaintiff bringing a § 1983 action against a government official bears the burden of overcoming the qualified immunity defense. *Id.* (citing *Quigley v. Tuong Vinh Thai*, 707 F.3d 675, 681 (6th Cir. 2013)). At the summary judgment stage, the defendant is entitled to qualified immunity "unless the facts, when viewed in the light most favorable to the plaintiff, would permit a reasonable juror to find that: (1) the defendant violated a constitutional right, and (2) that the right was clearly established." *Id.* "The court must grant qualified immunity if either prong is satisfied." *White v. Goforth*, No. 22-5409, 2023 WL 3546527, at *3 (6th Cir. May 18, 2023) (citing *Pearson v. Callahan*, 555 U.S. 223, 241 (2009)). "The relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Silberstein v. City of Dayton*, 440 F.3d 306, 311 (6th Cir. 2006) (quoting *Saucier v. Katz*, 533 U.S. 194, 201 (2001)).

---

[5] Defendant does not dispute he was acting under color of law. (*See generally* Doc. 32.)

When determining whether a right is clearly established, courts may not rely on "broad general propositions and instead must conduct the inquiry in light of the specific context of the case." *Habich*, 2023 WL 2911663, at *2 (quoting *Brosseau v. Haugen*, 543 U.S. 194, 198 (2004)) (citation modified). The "dispositive question," therefore, is "whether the violative nature of *particular* conduct is clearly established." *Id.* (internal citations omitted). "For all but the most obvious of constitutional violations, the plaintiff must 'identify another case that places the constitutional question beyond debate.'" *Saalim v. Walmart, Inc.*, 2026 WL 2873712, at *4 (N.D. Ohio Sept. 24, 2026) (quoting *Lee v. Russ*, 33 F.4th 860, 863 (6th Cir. 2022)).

"The obligation for a plaintiff seeking to defeat an assertion of qualified immunity to identify a case that put the officer on notice that his specific conduct was unlawful is especially important in the Fourth Amendment context." *Habich*, 2023 WL 2911663, at *2 (quoting *Rivas-Villegas v. Cortesluna*, 595 U.S. 1, 6 (2021)) (cleaned up). For this reason, "police officers are entitled to qualified immunity unless existing precedent squarely governs the specific facts at issue." *Est. of Marr v. City of Glasgow*, No. 25-5662, 2026 WL 735026, at *4 (6th Cir. Mar. 16, 2026) (quoting *Kisela v. Hughes*, 584 U.S. 100, 104 (2018)). "[P]re-existing law must dictate, that is, truly compel (not just suggest or allow or raise a question about), the conclusion for every like-situated, reasonable government agent that what the defendant is doing violates federal law *in the circumstances*." *Habich*, 2023 WL 2911663, at *2 (quoting *Saylor v. Bd. of Educ. of Harlan Cnty.*, 118 F.3d 507, 515 (6th Cir. 1997)) (citation modified) (emphasis in original). A plaintiff, therefore, must "identify a case where an officer acting under similar circumstances was held to have violated the Fourth Amendment," and the case must be a published case. *Id.* (citation modified); *see Mullenix v. Luna*, 577 U.S. 7, 12 (2015) (instructing courts not to "define clearly established law at a high level of generality").

### *i. Unlawful Detainment: Traffic Stop and Field Sobriety Tests*

Plaintiff appears to assert that Defendant's traffic stop and request for Plaintiff to perform several field sobriety tests violated his Fourth Amendment rights. (Doc. 21, at 2.)[6] Defendant argues that he is entitled to qualified immunity for these claims. (Doc. 32, at 4.)

The Fourth Amendment protects citizens from unreasonable seizures. U.S. Const. amend. IV. A traffic stop "constitutes a seizure of the occupants of the vehicle" and requires a "reasonable basis to justify it." *Henderson v. Vill. of New Holland*, 186 F.4th 357, 363 (6th Cir. 2026) (citation modified). An officer is justified to stop a car based on "mere reasonable suspicion that a felony has occurred or that a misdemeanor is occurring." *United States v. Stevenson*, 43 F.4th 641, 644 (6th Cir. 2022) (quoting *United States v. Brooks*, 987 F.3d 593, 598 (6th Cir. 2021)); *see United States v. Collazo*, 818 F.3d 247, 253–54 (6th Cir. 2016) (stating that the Sixth Circuit has two separate tests to determine the constitutionality of a traffic stop: "(1) probable cause for a stop for a civil infraction; and (2) reasonable suspicion of an ongoing crime for a stop for a criminal violation").[7] The Sixth Circuit has outlined the reasonable-suspicion standard as follows:

---

[6] It is unclear whether Plaintiff intended to bring these claims. Plaintiff's Amended Complaint states: "The Plaintiff avers that no reasonable suspicion existed which permitted Defendant to detain Plaintiff and ask Plaintiff to perform any field sobriety tests. As a result, Defendant unlawfully detained Plaintiff in violation of his clearly-established Fourth and Fourteenth Amendment rights to the Constitution of the United States." (Doc. 21, at 2.) In Plaintiff's response to Defendant's motion for summary judgment, however, Plaintiff summarized the action as "a civil rights action pursuant to 42 U.S.C. § 1983 for the violation of Plaintiff's 4th and 14th Amendment rights to be free from arrest without probable cause or malicious prosecution for driving under the influence of an intoxicant which is prohibited by Tenn. Code Ann. § 55-10-401, *et seq*." (Doc. 34, at 1.) Plaintiff also states that "the undersigned feels it necessary to emphatically state that Defendant Lee is sued for arresting and prosecuting Plaintiff without probable cause in violation of Plaintiff's clearly-established federal constitutional rights *only*." (Doc. 34, at 10 (emphasis added).)

[7] There is tension in Sixth Circuit case law regarding whether a probable cause standard or a reasonable articulable suspicion standard applies to traffic stops. *See, e.g.*, *United States v.*

> Although less demanding than the probable-cause standard, the reasonable-suspicion standard still "requires more than a mere hunch." *United States v. Campbell*, 549 F.3d 364, 370 (6th Cir. 2008) (internal quotation marks omitted). It "requires specific and articulable facts, which, taken together with rational inferences from those facts, reasonably warrant the continued detention of a motorist after a traffic stop." *United States v. Ellis*, 497 F.3d 606, 612-13 (6th Cir. 2007) (internal quotation marks omitted). In conducting a reasonable-suspicion analysis, "[r]eviewing courts must look at the totality of the circumstances of each case to see whether the detaining officer has a particularized and objective basis for suspecting legal wrongdoing," while bearing in mind that officers are permitted "to draw on their own experience and specialized training to make inferences from and deductions about the cumulative information available to them." *Id.* at 613 (internal quotation marks omitted). This totality-of-the-circumstances inquiry requires courts to "determine whether the individual factors, taken as a whole, give rise to reasonable suspicion, even if each individual factor is entirely consistent with innocent behavior when examined separately." *United States v. Perez*, 440 F.3d 363, 371 (6th Cir. 2006) (internal quotation marks omitted).

*Green v. Throckmorton*, 681 F.3d 853, 860–61 (6th Cir. 2012).

Detaining an individual for field sobriety testing "requires specific and articulable facts, which, taken together with rational inferences from those facts, reasonably warrant the continued detention of a motorist after a traffic stop." *Larriett v. Mich. Dep't of State Police*, 2026 WL 396626, at *7 (6th Cir. Feb. 12, 2026) (quoting *United States v. Ellis*, 497 F.3d 606, 612–13 (6th Cir. 2007)). When determining whether an officer "had a particularized and objective basis for suspecting legal wrongdoing," courts must "look at the totality of the circumstances on a case-by-case basis" while also "bear[ing] in mind that officers are permitted to draw on their own experience and specialized training to make inferences from the available facts." *Id.* (citation modified). "This test requires us to determine whether the individual factors, taken as a whole,

---

*Hutchins*, No. 22-3655, 2023 WL 7489987, at *3 (6th Cir. Nov. 13, 2023) (collecting cases). The parties appear to agree that the reasonable-articulable-suspicion standard applies. In Plaintiff's amended complaint, he states that no "reasonable suspicion" existed for Defendant to detain Plaintiff and request completion of field sobriety tests. (Doc. 21, at 2.) In Defendant's memorandum, he states that he "detained Plaintiff based on his reasonable suspicion for the offense of driving under the influence." (Doc. 32, at 4.)

give rise to reasonable suspicion, even if each individual factor is entirely consistent with innocent behavior when examined separately." *Id.* (internal citations omitted).

To overcome Defendant's claim of qualified immunity, Plaintiff bears the burden of identifying on-point, binding caselaw clearly establishing his right to be free from a DUI-suspicion traffic stop and from field sobriety testing under these circumstances. *See Bell v. City of Southfield*, 37 F.4th 362, 368 (6th Cir. 2022) (explaining that a plaintiff bears the burden of "point[ing] to a case showing that reasonable officers would have known their actions were unconstitutional under the specific circumstances they encountered"). Plaintiff failed to do so. (*See generally* Doc. 34.) Instead, Plaintiff focused his briefing on his arrest and malicious prosecution claims. (*Id.*) The only mention of the lawfulness of the traffic stop or performance of field sobriety tests is as follows:

> The undersigned opined in the Amended Complaint that no reasonable suspicion existed to even ask Plaintiff to perform a field sobriety test. No law requires Plaintiff to, but Plaintiff consented to placate Defendant Lee while telling him that he had worked out before performing his 12-hour shift.

(Doc. 34, at 4–5.)

Even if Plaintiff had demonstrated that Defendant violated his Fourth Amendment rights by initiating the traffic stop, Defendant would still be entitled to qualified immunity on this count. Plaintiff bears the burden of demonstrating that the law was clearly established at the time of the conduct at issue to have put Defendant on notice that his actions were unlawful. *Yoder v. Univ. of Louisville*, 526 F. App'x 537, 544 (6th Cir. 2013) (unpublished table decision). But Plaintiff failed to "cite any law that is particularized to the facts of his case" showing that his clearly established rights were violated. *Spencer v. Arrowood*, No. 16-cv-10417, 2017 WL 2904325, at *3 (E.D. Mich. July 7, 2017); (*see generally* Doc. 34.) Plaintiff has not satisfied his burden because he has not identified any case that clearly establishes that Defendant violated his

Fourth Amendment rights under circumstances similar to the facts in this case. *See Spencer*, 2017 WL 2904325, at *4; *Reguli v. Hetzel*, 178 F.4th 995, 1008 (6th Cir. 2026) ("Defendants . . . receive qualified immunity because their conduct didn't violate clearly established law. . . . In fact, the plaintiffs don't cite any authority that's remotely analogous to this case."). As a result, Defendant is entitled to qualified immunity on Plaintiff's § 1983 claims related to the initial traffic stop.

***ii. Unlawful Arrest***

Plaintiff also asserts that Defendant arrested him without probable cause in violation of his Fourth Amendment rights. (Doc. 21, at 2–3.) Defendant argues that (1) the issuance of a valid search warrant invalidates Plaintiff's false-arrest claim; and (2) he is entitled to qualified immunity on this claim. (Doc. 32.)

"To make out a Fourth Amendment false-arrest claim, a plaintiff must 'prove that the arresting officer lacked probable cause to arrest the plaintiff.'" *Alford v. Deffendoll*, 165 F.4th 490, 496 (6th Cir. 2026) (quoting S*ykes v. Anderson*, 625 F.3d 294, 305 (6th Cir. 2010)). "An officer has probable cause to arrest if, based on the information known to her, a reasonable officer would believe the arrestee had committed a crime." *Kirk v. Calhoun Cnty., Mich.*, No. 19-2456, 2021 WL 2929736, at *4 (6th Cir. July 12, 2021). "Generally, 'the existence of probable cause in a § 1983 action presents a jury question, unless there is only one reasonable determination possible.'" *Marriott v. Persing*, No. 23-3620, 2024 WL 1049451, at *2 (6th Cir. Mar. 11, 2024) (quoting *Logsdon v. Hains*, 492 F.3d 334, 341 (6th Cir. 2007)). But when the facts are undisputed, "the ultimate question of probable cause is a question of law for the court and not a jury." *Id.* (quoting *Gerics v. Trevino*, 974 F.3d 798, 805 (6th Cir. 2020)) (citation modified).

First, Defendant argues that "[t]he fact that a [search] warrant was issued [permitting the blood sample] and was valid based on the observations and testing performed at the scene on video completely invalidates a false arrest claim." (Doc. 32, at 4.) Defendant, however, does not cite any caselaw to support this argument, and the Court's independent research did not uncover any such authority. (*See generally id.*) While there is caselaw to suggest that a valid *arrest* warrant "is normally a complete defense to a federal constitutional claim for false arrest" under § 1983, there is no caselaw that suggests this reasoning has been extended to search warrants, and the Court declines to do so here. *Voyticky v. Vill. of Timberlake*, 412 F.3d 669, 677 (6th Cir. 2005); *accord Guy v. Metro. Gov't of Nash.*, 687 F. App'x 471, 477 (6th Cir. 2017) ("A facially valid arrest warrant issued by a magistrate judge provides a complete defense to a claim of unlawful arrest in violation of the Fourth Amendment unless the defendant made false statements or omissions knowingly, deliberately, or with reckless disregard for the truth. . . .").

Second, Defendant argues that he is entitled to qualified immunity for Plaintiff's false-arrest claim. (Doc. 32, at 7.) Plaintiff, therefore, again bears the burden of showing that Defendant's conduct "violated a right that was clearly established at the time of the violation." *Shipley v. City of Chattanooga*, No. 1:23-cv-299, 2025 WL 366631, at *3 (E.D. Tenn. Jan. 31, 2025) (citation modified).

Plaintiff asserts that "[m]any cases . . . establish Plaintiff has a clearly-established federal constitutional right to be free from arrest without probable cause" and that "no dispute exists that the right to be free from arrest without probable cause is clearly established." (Doc. 34, at 10–11.) As the Sixth Circuit recently explained, however, this is not the level of specificity Plaintiff needs to establish to meet his burden of showing that Defendant's conduct violated a clearly-established right:

> True, as a general matter, it is clearly established that an arrest in the absence of probable cause violates the Fourth Amendment. *Ouza v. City of Dearborn Heights*, 969 F.3d 265, 279–80 (6th Cir. 2020). The Supreme Court, however, has "repeatedly stressed that courts must not define clearly established law at a high level of generality, since doing so avoids the crucial question whether the official acted reasonably in the particular circumstances that he or she faced." *Wesby*, 583 U.S. at 63–64 (citation modified). Instead, a "rule's contours must be so well defined that it is clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Id.* at 63 (citation modified). In the Fourth Amendment context, "the specificity of the rule is especially important" because probable cause "turns on the assessment of probabilities in particular factual contexts and cannot be reduced to a neat set of legal rules." *Id.* at 64 (citation modified). As a result, to overcome qualified immunity, a plaintiff must "identify a case where an officer acting under similar circumstances was held to have violated the Fourth Amendment." *Id.* (citation modified).

*Mulcahey v. Twp. of Chocolay, Mich.*, No. 25-1396, 2026 WL 64236, at *3 (6th Cir. Jan. 8, 2026).

Plaintiff has not "identif[ied] a case where an officer acting under similar circumstances was held to have violated the Fourth Amendment." *Id.* And, although Plaintiff cites several cases for the proposition that the right to be free from arrest without probable cause is clearly established, he fails to explain how the facts in those cases are similar enough to those here that it would be "clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Id.* For example, Plaintiff first cites *Jones v. City of Elyria*, 947 F.3d 905 (6th Cir. 2020), but provides no analysis of how that case shows "an officer acting under similar circumstances" who "was held to have violated the Fourth Amendment." *Mulcahey*, 2026 WL 64236, at *3. In *Jones*, police officers "received a call that a potentially intoxicated white male was eating out of a dumpster located behind a shopping plaza," and officers made contact with the plaintiff after seeing him "talking to two women in the plaza parking lot." *Jones*, 947 F.3d at 910. The court found that the officers violated the plaintiff's right to be free from arrest without probable cause for obstruction of official business. *Id.* at 915. It is unclear how *Jones*—which did not involve a traffic stop, an arrest for driving under the influence, or any other relevant

factual overlap—would have made it "clear to a reasonable officer that his conduct was unlawful" in the situation Defendant faced here. *See id.*; *Mulcahey*, 2026 WL 64236, at *3.

Plaintiff next cites *Smith v. City of Wyoming*, 821 F.3d 697, 715 (6th Cir. 2016). In *Smith*, police officers entered the plaintiff's home and arrested her for obstructing official business under Ohio law, and the court held that the arrest violated her right to be free from arrest without probable cause. *Id.* at 703, 715–17. This case also did not involve a traffic stop, suspicion of a DUI, or any other relevant factual overlap which would have made it "clear to a reasonable officer that his conduct was unlawful" in the situation he confronted with Plaintiff here. *See id.*; *Mulcahey*, 2026 WL 64236, at *3.

Finally, Plaintiff "invites the Court to read any Sixth Circuit case governing the standard for arrest for DUI."[8] (Doc. 34, at 11.) Such an invitation similarly fails to "identify a case where an officer acting under similar circumstances was held to have violated the Fourth Amendment." *Mulcahey*, 2026 WL 64236, at *3.

Even if Plaintiff had shown that Defendant violated his Fourth Amendment right to be free from arrest without probable cause, Defendant remains entitled to qualified immunity on this count. *See Spencer*, 2017 WL 2904325, at *3–4. Plaintiff bore the burden of demonstrating the law was clearly established at the time of the challenged conduct, and Plaintiff failed to cite a case that is particularized to the facts of his case here. *See id.*; (Doc. 34.) Since Plaintiff has not met his burden of identifying "a case where an officer acting under similar circumstances was

---

[8] Plaintiff also cites to three out-of-circuit cases that he appears to argue are instructive on the standard for a finding of probable cause in a DUI case. *See Kubisiak v. Gualtieri*, 723 F.Supp.3d 1154 (M.D. Fl. 2004); *State v. Damato*, 302 Ga. App. 181 (Ga. Ct. App. 2010); *Lefebvre v. State*, 19 A.3d 287 (Del. 2011). Since Plaintiff must provide "on-point caselaw that would bind" the Sixth Circuit, and none of these cases would be binding on any Sixth Circuit court, the Court declines to analyze any effect they may have on Plaintiff's arguments.

held to have violated the Fourth Amendment," Defendant is entitled to qualified immunity on Plaintiff's false-arrest claim. *See Mulcahey*, 2026 WL 64236, at *3 ("Without binding, on-point guidance, even if [the plaintiff's] actions were not within the reach of the [ ] statute, [the officers] are nonetheless entitled to immunity because, at worst, they 'reasonably but mistakenly concluded that probable cause was present.'") (quoting *District of Columbia v. Wesby*, 583 U.S. 48, 65 (2018)). Accordingly, the Court will grant Defendant's motion for summary judgment on Plaintiff's § 1983 false-arrest claim.

***iii. Malicious Prosecution***

Plaintiff argues that Defendant maliciously prosecuted him for driving under the influence. (Doc. 21, at 3.) Defendant argues that he is also entitled to qualified immunity on this claim. (Doc. 32, at 6.)

"The Sixth Circuit recognizes a separate constitutionally cognizable claim of malicious prosecution under the Fourth Amendment, which encompasses wrongful investigation, prosecution, conviction, and incarceration." *Sykes*, 625 F.3d at 308 (quoting *Barnes v. Wright*, 449 F.3d 709, 715–16 (6th Cir. 2006)) (internal quotation marks omitted). To succeed on a malicious-prosecution claim under § 1983 when the claim is premised on a violation of the Fourth Amendment, a plaintiff must establish that:

> (1) "a criminal prosecution was initiated against the plaintiff and that the defendant made, influenced, or participated in the decision to prosecute";
>
> (2) "there was a lack of probable cause for the criminal prosecution";
>
> (3) "as a consequence of a legal proceeding, the plaintiff suffered a deprivation of liberty apart from the initial seizure"; and
>
> (4) "the criminal proceeding [was] resolved in the plaintiff's favor."

*Mills v. Barnard*, 869 F.3d 473, 480 (6th Cir. 2017) (quoting *Sykes*, 625 F.3d at 308–09) (internal quotation marks and alterations omitted).

"Although the right to be free from malicious prosecution is clearly established, it is narrow." *Caskey v. Fenton*, No. 22-3100, 2022 WL 16964963, at *10 (6th Cir. Nov. 16, 2022); *see Johnson v. Moseley*, 790 F.3d 649, 654 (6th Cir. 2015) (explaining that the right to be free from malicious prosecution, while clearly established, must be particularized to defeat qualified immunity). "A police officer violates a suspect's clearly established right to freedom from malicious prosecution under the Fourth Amendment 'only when his deliberate or reckless falsehoods result in arrest and prosecution without probable cause.'" *Johnson*, 790 F.3d at 655 (quoting *Newman v. Twp. of Hamburg*, 773 F.3d 769, 772 (6th Cir. 2014)). A plaintiff must, therefore, "assert that an officer has participated in his prosecution by making deliberate or reckless falsehoods where the officers and the prosecutor would have lacked probable cause absent those falsehoods." *Caskey*, 2022 WL 16964963, at *10.

Plaintiff did not argue that Defendant made "deliberate or reckless falsehoods" that resulted in an arrest and prosecution without probable cause. (*See generally* Doc. 34.) Plaintiff points to two of Defendant's actions to support his malicious-prosecution claim: (1) taking Plaintiff to jail for a blood toxicology test rather than a hospital, and (2) being present in the courtroom for Plaintiff's appearance for the DUI charge.[9] (Doc. 34, at 12.) However, these actions do not constitute "deliberate or reckless falsehoods" and instead are more akin to a disagreement with Defendant's choice of procedure. Plaintiff therefore fails to make an "allegation of blameworthy conduct" and Defendant's "'neutral' participation is insufficient" to sustain a malicious-prosecution claim. *Johnson*, 790 F.3d at 656.

---

[9] Whether Defendant was present in the courtroom is disputed. (Doc. 32-1 (Lee affidavit) ("I never went to Court[.]")). However, "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson*, 477 U.S. at 248. Since this fact is irrelevant or unnecessary to deciding whether summary judgment should be granted, it "will not be counted." *Id.*

Further, Plaintiff has not made the required showing of a "case that put [Defendant] on notice that his specific conduct was unlawful." *Rivas-Villegas*, 595 U.S. at 6. Plaintiff cites several cases in support of the proposition that there is a clearly-established right to be free from malicious prosecution but does not provide any analysis to explain how these cases show "an officer acting under similar circumstances" who "was held to have violated the Fourth Amendment." *Mulcahey*, 2026 WL 64236, at *3. Plaintiff first cites *Sykes v. Anderson*, 625 F.3d 294 (6th Cir. 2010), which held that the defendants waived qualified immunity, did not explain whether—or under what circumstances—the right to be free from malicious prosecution was clearly established, and bears no relevant factual overlap with this case. *Id.* at 299, 304, 308–17. Next, Plaintiff cites *Sanders v. Jones*, 845 F.3d 721, 728 (6th Cir. 2017), *as amended on denial of reh'g* (Mar. 20, 2017), *cert. granted*, *judgment vacated*, 583 U.S. 1047 (2018), which was later vacated by the Supreme Court, and thus cannot serve as on-point caselaw to defeat a claim of qualified immunity. *Mulcahey*, 2026 WL 64236, at *3 (explaining that the plaintiff has the burden of citing binding caselaw to overcome a claim of qualified immunity). Last, Plaintiff cites *Thompson v. Clark*, 596 U.S. 36 (2022), which involved a dispute over what "a favorable termination of the underlying criminal prosecution" required when bringing a malicious-prosecution claim, rather than a discussion of when a clearly-established right had been established in the qualified immunity context, and did not have factual similarity to the case here sufficient to have put Defendant "on notice that his specific conduct was unlawful." *Id.*; *Rivas-Villegas*, 595 U.S. at 6.

Since Plaintiff has not identified evidence reasonably suggesting that Defendant made deliberate or reckless falsehoods resulting in an arrest and prosecution without probable cause and has additionally failed to meet his burden of identifying "a case where an officer acting

under similar circumstances was held to have violated the Fourth Amendment," Defendant is entitled to qualified immunity on Plaintiff's malicious-prosecution claim. *Johnson*, 790 F.3d at 655; *Reguli*, 178 F.4th at 1008 (finding police officers were entitled to qualified immunity "because their conduct didn't violate clearly established law. . . . In fact, the plaintiffs don't cite any authority that's remotely analogous to this case.").

**B. State Law Claims**

Plaintiff also asserts several state-law claims against Defendant, over which the Court declines to exercise supplemental jurisdiction. (Doc. 21, at 3.) District courts have the discretion to decline to exercise supplemental jurisdiction if "the district court has dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c)(3). "If [ ] federal claims are dismissed before trial, [ ] state claims generally should be dismissed as well." *Brooks v. Rothe*, 577 F.3d 701, 709 (6th Cir. 2009) (quoting *Wojnicz v. Davis*, 80 F. App'x 382, 384–85 (6th Cir. 2003)) (citation modified). In making this determination, however, courts must "balance the values of judicial economy, convenience to parties, fairness, and comity to state courts." *Packard v. Farmers Ins. Co. of Columbus Inc.*, 423 F. App'x 580, 584 (6th Cir. 2011). When all federal claims have been dismissed, the Sixth Circuit "applies a strong presumption against the exercise of supplemental jurisdiction." *Id.* (citing *Moon v. Harrison Piping Supply*, 465 F.3d 719, 728 (6th Cir. 2006)); *Experimental Holdings, Inc. v. Farris*, 503 F.3d 514, 521 (6th Cir. 2007) ("Generally, once a federal court has dismissed a plaintiff's federal law claim, it should not reach state law claims.").

Here, the Court had jurisdiction over this action pursuant to 28 U.S.C. § 1331, since Plaintiff asserted claims under § 1983 for violation of his constitutional rights. (*See generally* Doc. 21.) As discussed above, the Court has determined that Defendant is entitled to summary

judgment on all of Plaintiff's § 1983 claims, and the Court finds that the interest of comity outweighs the interest of judicial economy, and, accordingly, declines to exercise supplemental jurisdiction over Plaintiff's state-law claims.

## IV. CONCLUSION

For the reasons stated herein, Defendant's motion for summary judgment (Doc. 31) will be **GRANTED**, and Plaintiff's claims under 42 U.S.C. § 1983 will be **DISMISSED WITH PREJUDICE**. The Court **DECLINES** to exercise supplemental jurisdiction over Plaintiff's state-law claims, and those claims will be **DISMISSED WITHOUT PREJUDICE**.

**AN APPROPRIATE JUDGMENT WILL ENTER.**

/s/ *Travis R. McDonough*
**TRAVIS R. MCDONOUGH**
**UNITED STATES DISTRICT JUDGE**